UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MODULAR STEEL SYSTEMS, INC., :
    INC.,
                                                    :
      Plaintiff                         CIVIL ACTION NO. 3:20-1186
                                                    :
    v
                                                      :    (JUDGE MANNION)
WESTFIELD INSURANCE,
                                                      :
      Defendant

## MEMORANDUM

Presently before the court is a motion to strike or, in the alternative, to dismiss the Amended Complaint filed by the defendant Westfield Insurance ("Westfield"). (Doc. 11). Also before the court is a motion to enforce a subpoena and compel production filed by Westfield. (Doc. 34). For the reasons set forth below, the motion to dismiss will be **GRANTED in part** and **DISMISSED AS MOOT in part**, and the Amended Complaint, (Doc. 7), will be **DISMISSED with prejudice**. Consequently, the motion to enforce and compel will be **DISMISSED AS MOOT**.

### I.    BACKGROUND

The plaintiff Modular Steel Systems, Inc. ("Modular"), initiated this suit on July 2, 2020, in the Luzerne County Count of Common Pleas, alleging breach of contract and bad faith claims against Westfield. (Doc. 1, at 11). In the suit, Modular alleged Westfield breached the terms of a commercial automobile liability policy by refusing to defend the plaintiff in a lawsuit arising

from a vehicle accident involving one of its employees. Westfield removed the case to this court on July 10, 2020, and subsequently filed a motion to dismiss, (Doc. 5).

Modular responded with an Amended Complaint, (Doc. 7), this time alleging that Westfield breached the terms of a commercial general liability policy with Modular by denying a claim for water damage to its modular units that occurred during a storm. Modular indicates it had contracted with a modular setting company called "Modsets" that was "entirely responsible for the setting and weather-tighting of the modular units" that Modular was using in a project known as the "Courtyard by Marriott Project" in North Brunswick, New Jersey. (Doc. 7, at 2). As a result of a storm on October 30 and October 31, 2017, Modular alleges that water penetrated the modular units and caused damage.

Modular indicates that it made a claim with Westfield, which Westfield acknowledged on January 31, 2018. However, on April 30, 2018, Westfield issued a letter of denial. Modular alleges it requested reconsideration of the denial because Westfield failed to take into consideration the contractual relationship between Modular and Modsets. On May 14, 2018, Modular again sought reconsideration of the denial. Modular contends that it was forced to expend $105,611.07 to mitigate the damage to its work, "[i]n accordance with

its contractual obligations to the owner/developer of the Marriot Project." (Doc. 7, at 3).

On August 27, 2020, Westfield filed the present motion to dismiss, (Doc. 11), and a brief in support, (Doc. 12). Modular filed a brief in opposition. (Doc. 19). Westfield filed a reply brief. (Doc. 24). Subsequently on March 18, 2021, Westfield filed a motion to enforce a subpoena and compel production of documents from InnZen Hospitality, LLC. (Doc. 34).

**II.   STANDARD**

Westfield's motion to dismiss is brought pursuant to the provisions of Fed.R.Civ.P.12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can granted. Dismissal should only occur where it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Accordingly, dismissal is appropriate "only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Trump Hotel and Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir.1998) (citing *ALA, Inc. v. CCair, Inc.,* 29 F.3d 855, 859 (3d Cir.1994)).

In deciding a motion to dismiss, a court should generally consider only the allegations contained in the complaint, the exhibits attached to the complaint, matters of public record, and "undisputably authentic" documents which plaintiff has identified as the basis of his claim. *See Pension Benefit Guarantee Corp. v. White Consolidated Industries, Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993).

It must also be remembered that when considering a motion to dismiss under Rule 12(b)(6), the important inquiry is not whether the plaintiff will ultimately prevail on the merits of his claim, but only whether he is entitled to offer evidence in support of them. *Scheuer v. Rhodes,* 416 U.S. 233, 236 (1974).

Westfield alternatively seeks to have the Amended Complaint stricken. Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P.12(f). "Immaterial matter is that which has no essential or important relationship to the claim for relief." *Delaware Health Care, Inc. v. MCD Holding Co.,* 893 F.Supp. 1279, 1291-92 (D.Del.1995). "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.*

"District Courts are afforded 'considerable discretion' when addressing a motion to strike. Generally, motions to strike are not favored and usually

will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." *Charleston v. Salon Secrets Day Spa, Inc., No. 08–5889, 2009 WL 1532050, at \*2 (E.D.Pa. June 1, 2009)* (internal citation and quotation marks omitted).

### III.    DISCUSSION

Westfield initially asks that the court strike the Amended Complaint because it sets forth a lawsuit entirely different from the one set forth in the Original Complaint. Namely, the Original Complaint involved a different type of conduct (construction defect v. auto accident) that occurred in a different state (New Jersey v. Maryland), that happened 13 years ago (2017 v. 2004), presumably under a different insurance policy. Thus, Westfield states that the Amended Complaint is not truly an amendment but rather an entirely new suit. Because the Federal Rules of Civil Procedure do not contemplate such conduct, insofar the Original Complaint did not give notice of Modular's claims in the Amended Complaint, Westfield requests it be stricken as an improper pleading.

Alternatively, Westfield seeks to have the Amended Complaint dismissed on the merits. More specifically, Westfield argues that Modular's claims do not fall within the insuring provision of the policy because no "suit"

was filed against Modular, nor any claim against it, that would trigger liability coverage.

The insuring agreement states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result.

([Doc. 11-1](Doc. 11-1), 154).[1]

Thus, Westfield emphasizes that, according to the policy, Westfield only has a duty to defend if a "suit" is filed against the insured. "Suit" is defined by the policy as:

> [A] civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:
>
> > a. An arbitration proceeding in which such damages are claimed and to which

---

[1] It is unclear why neither party in this matter felt the need to cite to the specific pages of the insurance policy that they directly quoted and upon which this entire dispute hinges. In the future, both parties are advised to cite to the specific pages of exhibits which they are quoting or citing in order to prevent the court from having to scan through over 400 pages of attached exhibits.

- 6 -

>  the insured must submit what does submit with our consent; or
>
>  b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

(Doc. 11-1, at 169).

Even viewing the allegations in the Amended Complaint in the light most favorable to Modular, Westfield argues that Modular has failed to allege that liability coverage is triggered since it has not pleaded any third-party claim, and there is no allegation that a "suit" was filed against Modular or even that any demand was made by a third party. Instead, Westfield observes that Modular has only alleged that it incurred $105,611.07 in "corrective work" and "equipment." (Doc. 7, at 3). According to Westfield, that is not sufficient to trigger coverage because it is not equivalent to an allegation that Modular became legally obligated to pay damages for "property damage" because of a third-party claim or suit.[2]

Modular's response, like its other filings on the docket, are by any measure subpar. Indeed, like the Original Complaint discussed below,

---

[2] Westfield argues that Modular's bad faith claim in Count II must be dismissed as untimely. Because the parties previously stipulated to the dismissal of Count II of the Amended Complaint, (Doc. 18; Doc. 21), the request will be **DISMISSED AS MOOT**.

Modular's brief in opposition appears to be a "draft" of a final, correctly formatted and proofread brief. By way of example, Modular's brief contains headings without any supporting argument beneath them. *See* Doc. 19, at 14-15. Additionally, the brief contains so many indefensible grammatical and formatting errors that it is at times difficult to decipher, which does not bode well for a plaintiff facing a dispositive motion. Most inexcusable, however, is Modular's failure not only to provide the court with a copy of the insurance policy at the heart of its suit, but also to attach those exhibits which it specifically indicates are attached to its Amended Complaint. *See* Doc. 7, at 1-3 (referencing Exhibits 1, 2, and 3).

Nevertheless, with respect to the dramatic differences between the Original and Amended Complaint, the only explanation Modular gives is the following: "Westfield wishes to make much ado about the mistake in filing of a draft Complaint for that which ought to have been filed." (Doc 19, at 2). Modular continues, "Westfield's fame to claims [sic] of surprise, misunderstanding or astonishment are disingenuous as best. What is interesting, and truly telling with respect to [Westfield's motion to strike] is that it is completely and totally without authority to support its position." (Doc. 19, at 3).

With respect to the merits, Modular baldly argues that a "suit" is not necessary to trigger coverage. Modular does not provide any basis for this

- 8 -

argument other than that the definitions of "occurrence" and "suit" in the policy "must be applied conjunctively with the obligation to pay promised in Section 1a of the policy it authored." (Doc. 19, at 4). Modular suggests that its allegation that it was required "to expend money in order to fulfill its obligations to correct and repair the damages which were occasioned by Modsets negligence," are sufficient to trigger coverage. (Doc. 19, at 5). Modular relies on the language in an Endorsement to the policy that modifies the liability coverage portion of the policy.

In its reply brief, Westfield acknowledges that there is an Endorsement that modified the coverage of "bodily injury" and "property damage" liability as follows:

> **1.** The following is added to **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, paragraph **1. Insuring Agreement:**
>
> > **f.** Damages because of "property damage" include damages the insured becomes legally obligated to pay because of "property damage" to "your work" and shall be deemed to be caused by an "occurrence", but only if:
> > **(1)** The "property damage" is entirely the result of work performed on your behalf by a subcontractor(s) that is not a Named Insured;
> > **(2)** The work performed by the subcontractor(s) is within the "products-completed operations hazard"; and

>> **(3)** The "property damage" is unexpected and unintended from the standpoint of the insured.

(Doc. 11-1, at 175). However, Modular observes that, while the Endorsement modifies the liability coverage, it does not alter the fact that Westfield's duty to defend extends only to "suits" that seek damages covered by the policy.

Here, the court declines to strike the Amended Complaint on the basis that it differs, albeit significantly, from the Original Complaint. Although Modular's mistake in filing a draft complaint was no doubt exceptionally careless, Westfield does not appear to have suffered any identifiable prejudice by it. With respect to the merits of the motion to dismiss, however, the court, having reviewed the policy, the appliable law, and in viewing the facts in the light most favorable to Modular, finds dismissal is appropriate.

Pursuant to Pennsylvania law,

> an insurer has a duty to defend against any suit brought against one of its insureds that potentially falls within the coverage of the insured's policy. To determine whether this duty is triggered, a court looks the factual allegations of the underlying plaintiff's complaint as well as the language of the policy, and determines whether any potential liability on the insured's behalf would be covered by the policy. If such a duty is found to exist, the insurer must defend against the suit until it becomes absolutely clear that there is no longer a possibility that the insurer owes its insured a defense.

*Westfield Insurance Co. v. Icon Legacy Custom Modular Homes*, No. 4:15-CV-539, 2018 WL 1300005, at *2-3 (M.D.Pa. Mar.13, 2018) (footnotes and quotation marks omitted).

Here, the policy plainly states that Westfield "will pay those claims the insured becomes *legally obligated* to pay as damages because of 'bodily injury' or 'property damage,'" and that it "will have the right and duty to defend the insured against any 'suit' seeking [such] damages." (Doc. 11-1, at 154) (emphasis added). Thus, Westfield's obligation to defend Modular is premised upon Modular being involved in a "suit"—i.e., legally obligated to pay damages to a third party. "Suit" is clearly defined by the policy, *see supra* p.6-7, and cannot be construed to include a situation where Modular's property is damaged from rainwater and it elects to repair that damage in order to perform on a contract. The necessity that the insured become legally obligated for damages is reiterated throughout the policy with references to, for example, the "attorneys' fees and litigation expenses" that Westfield will pay for a third party on behalf of the insured "for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged," (Doc. 11-1, at 155); promises to pay "those sums that the insured becomes legally obligated to pay as damages," (Doc. 11-1, at 159); and Westfield's obligation to pay, "with respect to any claim we investigate or settle, or any 'suit' against an insured we defend . . . [a]ll court costs taxed against the insured in the 'suit.'" (Doc. 11-1, at 161).

- 11 -

In *Allegheny Design Mgmt., Inc. v. Travelers Indem. Co. of Am.*, 572 Fed.App'x 98, 101-02 (3d Cir.2014), the Third Circuit held that an insurer had no duty to defend where the policy had language identical to the policy here requiring a "suit," because no "suit" had be filed against the insured. *See also Continental Ins. Co. v. Alperin, Inc.*, No. 97-1008, 1998 WL 212767, at *6 (E.D.Pa. Apr. 29, 1998) (holding insurer had no duty to defend prior to a "suit" being filed against the insured). Here, like in *Allegheny Design*, "[i]n the absence of a suit, under the plain language of the policy, [Westfield] does not have a duty to defend. Furthermore, . . . there is no record evidence that [Modular] has otherwise been held liable for the damaged [modular units.]" 572 Fed.App'x at 102.

Despite Modular's arguments to the contrary, the Endorsement does not change the necessity of a "suit." Instead, the Endorsement merely defines when property damage will be covered in the event the insured becomes "legally obligated" to pay for "property damage" as a result of its work. (Doc. 11-1, at 175). Notably, the original insuring agreement, in section 1(e), likewise defines when damages due to "bodily injury" will be covered in the event the insured became legally obligated to pay them. (Doc. 11-1, at 154). Neither of these sections invalidate the statement preceding them that indicates Westfield "will pay those sums that the insured *becomes legally obligated to pay as damages* because of 'bodily injury' or 'property damage.'" (Doc. 11-1, at 154) (emphasis added). Therefore, in the absence of a suit,

Westfield does not have a duty to defend Modular as to the property damage. Because there has been no breach of contract by Westfield, the motion to dismiss will be **GRANTED**, and the Amended Complaint **DISMISSED**.

Finally, as a result of the court's disposition on the motion to dismiss, Westfield's motion to enforce a subpoena and compel production, (Doc. 34), is **DISMISSED AS MOOT**.

### IV.   CONCLUSION

For the reasons set forth above, the motion to dismiss is **GRANTED in part** and **DISMISSED AS MOOT in part**, and the Amended Complaint will be **DISMISSED with prejudice**. Additionally, Westfield's motion to enforce and compel is **DISMISSED AS MOOT**.

An appropriate order will issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: March 19, 2021**
20-1186-01